Fink, Executor, v. Martin and another.

John D. Fink, Dative Testamentary Executor of the last will of Sarah Baum, deceased, *v.* William H. Martin and another.

A defendant owes no costs until the final determination of the action, and then only in case judgment be rendered against him. C. P. 549. Otherwise, as to plaintiffs.

A defendant whose property has been sequestered, pending the suit, at the instance of the plaintiff, has a right to have the sequestration set aside, on executing a bond in favor of the plaintiff with the security required by law. C. P. 279. His right to claim possession of the property, is subject to no other condition than that of giving the bond. The sheriff has no right to require from him payment of any of the expenses of the sequestration, before restoring the property. The defendant will be liable therefor, only in case judgment be rendered against him. C. C. 2949. C. P. 283.

Where a plaintiff who has obtained a judgment below, in a case depending before the Supreme Court on a suspensive appeal, represents that his judgment has been recorded in the Mortgage office, and swears that he apprehends that the defendant will conceal, or dispose of, pending the appeal, a slave, on whom he has a mortgage resulting from the recording of the judgment, he may obtain a sequestration from the lower court. C. P. 275. Act 7 April, 1826, § 9. The appellee is not confined to his recourse on the surety in the appeal bond.

As a general rule, the jurisdiction of the appellate court attaches as soon as the appeal bond is filed, and the lower court has no longer authority to take any steps but such as may be necessary to transmit the record to the Supreme Court, or, by a provisional and conservatory order, to secure the ultimate execution of the judgment of the appellate court.

Appeal from the District Court of the First District, *Buchanan*, J.

Simon, J. The history of this case is this: It appears that some time in January, 1843, a suit was instituted in the District Court of the First District by John D. Fink, as dative executor of the succession of Sarah Baum, against the defendants, with the view of obtaining the nullity of a mortgage executed by Martin in favor of Ross, on the ground of fraud; and also on the ground that he had obtained a judgment against Martin, in the Court of Probates, as one of the sureties of Thomas Powell, who had been removed from the office of testamentary executor of the said succession. The plaintiff obtained a judgment by default against said defendants, from which the latter took an appeal, which is yet pending before this court.

Some time previous to the institution of said suit, (Decem-

ber, 1842,) the plaintiff had issued a *fi. fa.* from the Probate Court against Martin, but having been unable to sell the property seized, owing to the existence of previous mortgages, and the sheriff retaining in his possession a slave named David, seized among the rest, notwithstanding no sale thereof had been or could be made, a rule was taken by Martin on the plaintiff and sheriff, to show cause why said slave should not be returned to him, &c. This rule was made absolute, on appeal, by this conrt. See the case of *Fink, Executor,* v. *Martin,* in which it was decided that the defendant Martin *should recover the possession of the slave then in the custody of the sheriff, the plaintiff and appellee paying the costs in both courts.*

It further appears that after the return of our mandate to the inferior court for execution, the plaintiff, John D. Fink, filed a supplemental petition in the District Court, for the purpose of suing out a writ of sequestration, to preserve the slave in the custody of the sheriff during the pendency of the appeal before this court, and to prevent the concealing of said slave by the owner, or his being conveyed out of the State, which writ was granted and regularly sued out, by virtue of which the sheriff sequestered the said slave *David,* and kept him in his possession until, as shown by his return, he was released by the defendant's executing a bond in the sum fixed by the court. That petition alleges that "petitioner fears that on obtaining possession of the slave, the defendant, Martin, will conceal, part with, or dispose of the same during the pendency of the suit in the Supreme Court, and that, in consideration thereof, and of the recording of the judgment of the Probate Court, he is entitled to cause said slave to be sequestered, to await the final action of the Supreme Court, on the validity of the mortgage in favor of Ross."

A few days after the writ of sequestration had issued, the defendant, Martin, made a motion to obtain possession of ths slave sequestered, on his filing a bond according to law. This was granted by the court *a quà,* which ordered that the sheriff should deliver the slave to said Martin, on his executing his bond with the surety therein named, in the sum of twelve hundred dollars conditioned as the law directs, which bond was given and

Fink, Executor, v. Martin and another.

filed accordingly; but on the same day, this order was amended by an order of the said court, on the motion of the sheriff, and on his suggesting that he had incurred considerable expense for keeping the slave sequestered, and also in order to obtain possession of the same, for which he has a privilege for keeping and preserving said slave; and it was accordingly further ordered by the inferior court, that previous to obtaining possession of the slave sequestered, the defendant should pay to the sheriff the amount of costs so expended by him, and that the previous order to bond said slave should be amended accordingly, and from this last interlocutory judgment, the defendant, Martin, has appealed.

Sometime after the aforesaid appeal was taken by Martin, he filed a written motion for a rule on the plaintiff, to show cause why the sequestration previously sued out should not be set aside, and the plaintiff's supplemental petition dismissed, on the grounds: 1st, that the judgment rendered by the District Court had been appealed from, and all its effects suspended by the suspensive appeal; and that the fact that plaintiff caused his judgment to be recorded, gives him no privilege which authorizes a writ of sequestration to be issued; 2d, that the judgment set forth in the said supplemental petition has been satisfied, or that said plaintiff has in his hands funds sufficient to satisfy the same; and 3d, that at this stage of the proceedings, a final judgment having been rendered more than a year previous, a supplemental petition cannot legally be filed by the plaintiff.

The plaintiff answered to the rule, when, on the day fixed for the trial thereof, after an investigation of the grounds therein stated, the judge *a quo*, being of opinion, that by the previous appeal the cognizance of the suit was withdrawn from his court, and is now vested in the appellate tribunal—that no new issue could be raised by the filing of a supplemental petition— that the appeal bond given by the appellants is all the security that the law authorizes the court to grant to the appellee for the satisfaction of his judgment, and that said appellee has no legal right to the additional security of a sequestration of the appellant's property pending the appeal, made the rule abso-

lute, and ordered the supplemental petition and writ of seques-
tration to be dismissed; and from this judgment the plaintiff
has, also, appealed.

It results, therefore, that this case comes up on two appeals, to
wit: one taken by the defendant Martin, from the judgment order-
ing him to pay the costs due to the sheriff for keeping the slave
sequestered, before the latter is bound to deliver him back the
property; and the other taken by the plaintiff, who complains
of the dismissing of his petition and writ of sequestration.

On the appeal taken by Martin we have come to the conclu-
sion, that the judgment complained of is erroneous; as, being
the party defendant, the appellant owed no costs until the final
determination of the suit, and then only in case judgment should
be rendered against him. Code of Practice, art. 549. The
rule is different with regard to plaintiffs, who are always bound
to pay the officers from whom services are required, and who
are even bound to give security for the payment of the fees due
to clerks and sheriffs, whenever the latter think proper to de-
mand it; and such officers are accordingly authorized by law
to collect their fees at certain periods, before the final decision
of the suit. Bull. and Curry's Dig., *Verbo* Fee Bill, Nos. 18
and 22. Here, the writ of sequestration was issued at the suit
of the plaintiff, and the slave sequestered was taken possession
of by the sheriff for the benefit of said plaintiff, whose object
was to keep and preserve said slave, until after the decision of
the suit. Code of Practice, art. 269. But the defendant had a
right to have the sequestration set aside, on executing his obli-
gation in favor of the sheriff with one good and solvent surety,
for the amount to be determined by the judge. Code of Prac-
tice, art. 279. And such right was subject to no other condi-
tion than the giving of said obligation, from which the security
thus given becomes responsible that the defendant shall not
send away the slave out of the jurisdiction of the court, that he
shall not make any improper use of him, and that he will faith-
fully present him, after definitive judgment, in case he should
be decreed to restore him to the plaintiff. Ibid, art. 280. Now,
how can the sheriff set up a claim and privilege upon the de-
fendant's property for the expenses secured by the sequestration;

and where is the law that allows him such a privilege, before judgment be rendered against the defendant? Could he maintain an action against him for those expenses? The suit is not determined, and the sequestration may turn out to have been illegally and improperly sued out. Is a citizen to be deprived of the use of his property, and not to be allowed to take it back on complying with the requisites of the law, without previously paying the costs of proceedings, which, on a final decision of the cause, may be pronounced to have been unjustly and vexatiously instituted? Surely not; and without any further comment on the injustice of the appellee's pretensions, we do not hesitate to declare that, from the provisions of the law, they cannot be countenanced.

By the terms of article 2949 of the Civil Code, under the head of "*Judicial Sequestration,*" it is provided that "the obligation of the party that has seized the property *consists in paying the guardian his legal fees.*" And article 283 of the Code of Practice says, that "the sheriff may confide the property sequestered to the care of guardians or overseers for whose acts he remains responsible, and that he will be entitled to receive a just compensation for his administration, to be determined by the court, *to be paid to him out of the proceeds of the property sequestered,* IF JUDGMENT BE GIVEN IN FAVOR OF THE PLAINTIFF." In the French text : "*La cour accordera une indemnité qui sera á la charge de la partie qui succombera sur le procès, et qui sera prèlevée sur la chose,* SI LE SEQUESTRE EST DECLARE VALABLE." *Inclusio unius est exclusio alterius ;* and it follows, therefore, that if judgment be not given in favor of the plaintiff, *si le séquestre n'est pas déclaré valable,* the compensation due to the sheriff shall not be paid out of the proceeds of the property sequestered, but shall be paid by the party cast. No final judgment has ever been rendered in this case ; the bond furnished by the appellant represents the property sequestered; and we are at a loss to conceive how the judge *a quo* could order the defendant to pay now, the costs incurred by proceedings which may hereafter turn out to be unsuccessful. If the appellant is ultimately bound to pay those costs, his bond standing in lieu of the property, will answer for it, if it is not presented ; but it is certain that no such condition

`could legally be imposed, on his taking back the possession of the slave, after the filing of said bond.

On the appeal taken by the plaintiff, this case is, in its nature, very similar to that of *Williams* v. *Duer*, 14 La. 532, in which we recognized the doctrine, that when a creditor has a special mortgage, or a lien or privilege on the property of his debtor, he has the power of sequestering such property when he apprehends that it will be removed out of the State before he can have the benefit of his mortgage, lien, or privilege, (Code of Practice, art. 275. Bull. & Curry's Digest, p. 774, § 3), and that, in such cases, a writ of sequestration can be granted in the absence of a principal demand pending before the court granting it. In this case the plaintiff alleges in his petition that the judgment upon which the original suit, yet pending on appeal before this court, is based, was duly recorded in the office of the Recorder of Mortgages; that the defendant was the owner, and in possession of two other slaves which he caused to be concealed or conveyed out of the State; and he swears in his affidavit that, *he has a lien by judicial mortgage upon the slave* sought to be sequestered, and that he fears that said defendant will conceal, part with, or dispose of said slave, on obtaining possession thereof during the pendency of the appeal taken in said suit. Thus, it was clearly made to appear that it became necessary to preserve the property subject to the plaintiff's alleged lien by judicial mortgage, during the pendency of the principal action; and we are of opinion that the judge *a quo* erred in dismissing and setting aside the sequestration.

It is true, as a general rule, that the jurisdiction of the appellate court attaches as soon as the appeal bond is filed; and that the court of the first instance has no longer authority to take any steps in the case, except such as are necessary to transmit the record to the superior court. 4 La. 205. 7 La. 448. But as we held in the case first above quoted, we are not ready to decide that the original demand is so entirely and definitively out of the control and jurisdiction of the lower court, as to preclude the judge thereof from granting any provisional and conservatory order, so as to secure the ultimate execution of the judgment to be rendered in the appellate court. So, in the case of *Stanton*

v. *Parker*, 2 Rob. 550, we held that with regard to the surety on the appeal bond, when such surety becomes insolvent after the appeal is brought up, it is the same as if no security had been given, and such insolvency must be inquired into before the court which granted the appeal, and that, though divested of all jurisdiction as to the case itself and its merits, it is empowered to decide whether execution may be taken out, notwithstanding the appeal. Here, the sequestration which was granted had nothing to do with the merits of the principal action. It was a mere conservatory measure which was resorted to, to secure the preservation and the exercise of the right claimed by the plaintiff in the original suit; and although an appeal bond was furnished by the defendant and appellant, so as to operate as a suspensive appeal, which bond the judge *a quo* appears to consider as the only security to which the plaintiff is legally entitled, we are not prepared to say that the appellee should be deprived of his remedy on the property itself subject to his alleged lien, and that such remedy should not be resorted to before exercising his recourse against the surety on said appeal bond, in case the judgment appealed from should be maintained and ordered to be executed. This is also, perhaps, necessary for the protection of the rights of the surety on the appeal bond, who, although bound for the amount of the judgment to be rendered, has nevertheless the right of requiring the property of his principal to be discussed before being decreed to pay any part of the amount of the judgment. Code of Practice, art. 596. 9 La. 227. Bull. & Curry's Dig. p. 181, § 23. Again, the proceedings had to obtain the sequestration, have no reference to, and do not touch in any way the merits of the original controversy; and, we think, they should have been maintained below, until the final decision of the suit now pending on appeal before this court.

As to the question of satisfaction of the plaintiff's judgment, which forms the second ground set up by Martin in his motion to dismiss the sequestration, we think the court *a quâ* properly abstained from expressing any opinion upon it. This question goes to the merits of the original action, and is founded upon a matter which the lower court has no longer any authority to try. It should, perhaps, have been pleaded in the princi-

pal suit; but it is clear that it cannot at present avail the defendant, so as to destroy in a subsequent proceeding foreign to the original issue, the effect of a judgment, upon which an appeal having been taken, this court has not yet been called on to express an opinion. The District Court was without jurisdiction to take cognizance of a matter which is nothing but a plea in bar of the action now pending on appeal before us.

It is, therefore, ordered and decreed, that the judgment of the District Court as appealed from by Martin, be annulled and reversed; that the sheriff of the District Court do deliver to said appellant the slave *David* heretofore sequestered, in consequence of the filing of said appellant's bond with the surety and for the amount required by the inferior tribunal, without any further condition; and that said sheriff pay his portion of the costs of this appeal.

And it is further ordered and decreed, that the judgment of the District Court as appealed from by the plaintiff, be annulled and reversed; that the rule obtained by the defendant be discharged; that the sequestration be reinstated; and that this case be remanded for that purpose to the lower court, the appellee paying the costs in this court.

*Hoffman,* for the plaintiff.

*McHenry,* for the defendants.